MICHEL, Chief Judge,
dissenting in part.
Although I join in the majority opinion with regard to its disposition of the claim construction, invalidity, and injunction issues relating to two of the patents-in-suit, U.S. Patent Nos. 6,282,574 (“'574 patent”) and 6,104,711 (“'711 patent”), I respectfully dissent as to its disposition of the issues regarding the third patent-in-suit, U.S. Patent No. 6,359,881 (“'880 patent”), as well as its vacating the damages awarded by the jury. I would hold that the district court correctly construed all of the terms at issue in this appeal. Further, I would hold that the district court’s jury instructions on obviousness were consistent with *1312 the Supreme Court’s decision in KSR Int’l Co. v. Teleflex, Inc., — U.S. —, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007) and the precedents of this court. Therefore, I would affirm the district court’s liability judgment, its damages award, and its permanent injunction in their entirety.
I. Claim Construction
A. '880 Patent: “Few Feet”
The majority holds that the district court erred by failing to construe the '880 patent’s claims to limit them to systems that operate within a range of a “few feet.”[1] It is undisputed that the claims of the '880 patent do not include any such range limitation. But the majority imputes one from the use of the claim term “localized wireless gateway system,” focusing specifically on the requirement that the gateway system be “localized.” It does so based on reading out of context snippets of language used by the applicants in the prosecution of not the '880 patent, but rather a related patent not asserted in this case.
We have made clear the methods by which claims must be construed. The explicit language of the claims must be examined, and typically the ordinary meaning of the claim language will control. Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed.Cir.2005). The specification must also be scrutinized and the claim language read in the context of the specification. Id. at 1315. The prosecution history may also be relevant, and can be dispositive when the applicant clearly and expressly disavowed claim scope. Id. at 1317; see also Amgen Inc. v. Hoechst Marion Roussel, Inc., 314 F.3d 1313, 1327 (Fed.Cir.2003) (holding that “the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant’s clear disavowal of claim coverage”).
Here, as already mentioned, the claim language merely requires the gateway system to be “localized.” As the district court properly noted, the specification clarifies what is meant by “localized.” It states that “[t]he gateway system is a localized private system, as opposed to the common, public cellular telephone networks,” that can “provide communication within an office or industrial complex ... [or] a geographically limited public area of interest, such as an airport, shopping center, hotel/convention center complex or the like.” '880 patent col.5 ll.30-37; see also id. col.10 ll.30-38 (discussing an embodiment *1313 that is “a business application for a single factory or office location” where the system’s service “would be limited to the area in and around the factory or office location”); id. col. 10 ll.42-44. Nowhere does the specification mention any restriction to a “few feet;” to the contrary, it discloses areas of operation as large as an airport, shopping center, or industrial complex. Consequently, the district court properly rejected Vonage’s proposed “few feet” limitation.
The majority subverts the import of the unquantified term “localized” and ignores the clear meaning of the claim language and specification by finding prosecution history disclaimer. To be limiting, such a disclaimer must be clearly and expressly stated. Amgen, 314 F.3d at 1327. I agree with the majority that the prosecution of a divisional application may sometimes disclaim claim scope in a co-divisional application in the same family, even if the disclaimer occurs after the co-divisional application has been filed or issued as a separate patent. But the allegedly disclaiming language in the file history of the '880 patent’s co-divisional application relied on by the majority as overpowering numerous clear statements in the specification simply does not rise to the level of a clear disavowal of claim scope.
The majority seizes on two passages in the '880 patent’s co-divisional application file history, both instances where the applicants are distinguishing their invention from prior art. In one, the applicants note that “ ‘wireless’ [as used in the prior art references] does not mean ‘local wireless,’ as claimed by the present invention, in the sense of a cordless phone that is restricted to operate within a few feet from a base station.” J.A. at 7191 (emphasis added). The applicants here are clear that they are merely distinguishing certain prior art where “the term ‘wireless’ ... is directed to systems having wide-ranging networks” that span large geographic areas. Id. This distinction is precisely the same made in the specification. While the applicants use the example of a cordless phone operating within a few feet to illustrate why their invention is different, they are not clearly disavowing everything other than such cordless phones.
The second excerpt from the prosecution history is even less clear as an alleged disavowal. The applicants merely stated, “[a prior art reference] arguably appears to disclose a local cellular or local wireless system, such as, for example, a cordless phone that is restricted to operate within a few feet from a base station.” J.A. 7189 (emphasis added). Applicants are describing a prior art reference, not their invention, and again simply use the “example” of a cordless phone as an illustration. The applicants go on to distinguish that prior art on other grounds. See id. This is not the “clear disavowal” of claim scope required by our precedents. Since no clear disavowal appears in the prosecution history, and the claim language, read in the context of the specification, specifically includes numerous embodiments with ranges greatly exceeding a few feet, I must dissent from the holding that the district court erred by not limiting the term “localized wireless gateway system” to require ranges limited to a few feet.
B. '880 Patent: Compression/Packetization
The majority also finds error in the district court’s decision not to limit the term “localized wireless gateway system” to require that the gateway perform data compression and packetization. I cannot *1314 agree. Once again, the claim language is silent and does not mention these functions. The district court correctly concluded that the term should not be so limited.
This time, the majority relies on a passage in the specification where it states: “Thus, in one aspect, the present invention relates to a localized wireless gateway system .... The gateway compresses and decompresses voice frequency communication signals and sends and receives the compressed signals in packet form via the network.” '880 patent col.4 11.6-15 (emphasis added). But the majority fails to consider that this specification was originally penned to also support claims that were ultimately prosecuted in a separate divisional application, pursuant to a restriction requirement imposed by the PTO, because they constituted a separate and distinct invention. Those claims were issued in U.S. Patent No. 6,542,497 (“'497 patent”), which was not asserted in this action. The '497 patent claims a “localized wireless gateway system” that contains certain specific features, including components to compress and packetize data. '497 patent cl.l. Thus the “one aspect” referred to in the specification actually refers to subject matter outside the scope of the '880 patent altogether. And as already discussed and as the district court noted, the claims of the '880 patent do not require any particular type of “localized wireless gateway system” or that it perform any particular functions.[2] In such situations, we have held that the portions of the specification relating to claims of a separate divisional application should not be limiting. See LG Elecs., Inc. v. Bizcom Elecs., Inc., 453 F.3d 1364, 1378 (Fed.Cir.2006). Thus, I would affirm the district court’s decision not to limit the term “localized wireless gateway system” in the '880 patent to require performance of data compression or packetization.
II. Obviousness
The majority remands to the district court for reconsideration of the obviousness issues relating to the '880 patent. Because I do not discern claim construction error, I also would affirm the district court’s determination that the '880 patent is not invalid and also reject Vonage’s argument for reversal due to alleged defects in the jury instructions under KSR. Von-age argues that the district court applied the “rigid and mandatory” requirement of a “teaching, suggestion, or motivation to combine known elements,” which the Supreme Court rejected in KSR. KSR, 127 S.Ct. at 1741. I disagree.
The relevant instructions were:
If you find that a combination of items of the prior art showed each of the elements of the claims in suit, you must determine whether a person of ordinary skill in the art would have been motivated to combine the prior art references.
If you conclude that the prior art discloses all the elements of the claimed invention, but those elements are found in separate prior art references, you must then consider whether or not it would have been obvious to combine the elements.
To answer this question yes, you must determine that there was some sugges *1315 tion in the prior art to combine the elements. The suggestion can be expressly stated in a particular reference, or it may be within the knowledge that was generally available to one of ordinary skill in the relevant art.
J.A. at 6626. I think it plain that these instructions do not require an explicit reason to combine to be found in the prior art references themselves. Rather, the district court instructed that such a reason could be gleaned from “the knowledge that was generally available to one of ordinary skill in the relevant art.” Id. Such an instruction is correct.
III. Damages and Injunction
Since I would affirm the district court’s judgments on infringement and validity, I would not disturb the jury’s determination of damages nor the district court’s permanent injunction. Further, even when this court reverses a district court’s finding of infringement and/or validity as to some, but not all, of the patents-in-suit, we do not necessarily need to vacate and remand the damages award.
When, as here, the evidence shows that each of the accused products infringes all of the patents-in-suit, and the infringer fails to make any showing on appeal that the damages award would not be supported by only those patents for which we affirm liability, we must affirm the damages despite our reversal of part of the infringer’s liability. Remanding simply to reconfirm that the damages award is indeed supported by the affirmed liability under the remaining patents-in-suit imposes unnecessary costs on litigants and wastes judicial resources. Therefore, we should affirm the jury’s determination of Verizon’s damages even assuming that the claims of the '880 patent were improperly construed.
CONCLUSION
In my view, this case is yet another example of our court needlessly upsetting judgments by finding legal error in Mark-man rulings that, while perhaps less than perfectly explained, are correct and that follow the methods for claim construction as explained in our precedents. Requiring more is not justified. Accordingly, I dissent.

. The majority opinion remarks that it was futile for Vonage to lodge any objections under Fed.R.Civ.P. 51 as to its proposed “few feet” limitation following the district court’s Markman hearing. I agree that the futility doctrine applies here but due to Cardiac Pacemakers, Inc. v. St. Jude Med., Inc., 381 F.3d 1371, 1381 (Fed.Cir.2004). The majority opinion instead relies on an exchange at trial when Vonage’s expert testified that he interpreted the prosecution history of the '880 patent to indicate that the applicant intended to limit the claimed invention to operate only "within a few feet of the base station.” J.A. at 6046 (1143:20-1144:8). Verizon objected and moved to strike the testimony because “[i]t is a legal conclusion” and ”[t]he Court has already construed the claim ... and, frankly, rejected this proposed limitation which Vonage offers.” Id. (1144:9-14). In response, the district court simply stated, "Objection sustained,” and did not elaborate. Id. (1144:15). But the district court’s terse evidentiary ruling here is far from a clear indication that any further objection would be futile since it provided no explanation — nor was one required — of the basis for sustaining Verizon’s objection. To hold otherwise would impose an unnecessary burden on district judges to explain each such ruling to avoid unintentionally excusing parties from complying with Rule 51.

. Indeed, the fact that the '497 patent explicitly adds limitations regarding compression and packetization functions to its claim over a "localized wireless gateway system” tends to show that such functions are not typically or inherently performed by such a system.